# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| STACEY CUNNINGHAM AND OTHER PARTIES, § § § *Plaintiff,* § v. § § Q COLONY LLC d/b/a GIBSON'S § RESTAURANT GROUP, § § *Defendant.* § | Civil Action No. 4:24-cv-500 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Compel Arbitration and Stay the Proceedings (Dkt. #7). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

Defendant employed Plaintiff as a manager from March 2023 to September 2023 (Dkt. #1). Defendant required Plaintiff, upon beginning employment, to sign an Arbitration Agreement ("the Agreement") along with other onboarding documents such as a W-4, Electronic Signature Consent Form, and Background Check Notice (Dkt. #11 at p. 2). During Plaintiff's employment, Plaintiff received several reports of sexual harassment (Dkt. #1). Following the advice and procedural guidelines of the Human Resources ("HR") department, Plaintiff reported the sexual harassment to the relevant supervisors in September 2023 (Dkt. #1). Shortly after doing so, Defendant terminated Plaintiff's employment (Dkt. #1). Plaintiff then filed a retaliation claim against Defendant in this Court (Dkt. #1).

In response to Plaintiff's Complaint, Defendant filed a Motion to Compel Arbitration and Stay the Proceedings on July 11, 2024 (Dkt. #7 at p. 1). Defendant argues that Plaintiff improperly brought her claim before the Court because the parties had signed the Agreement (Dkt. #7 at p. 1). Further, Defendant argues the Agreement should be arbitrated under the Federal Arbitration Act ("FAA") and Texas Arbitration Act ("TAA"), that the Agreement is valid and enforceable, and that Plaintiff's claims fall within the Agreement's scope (Dkt. #7 at pp. 3–6). On August 1, 2024, Plaintiff filed its Response to Defendant's Motion to Compel Arbitration (Dkt. #8). Plaintiff's Response claimed that the Agreement did not name Defendant, that Defendant did not sign the agreement, that the Agreement contained a condition precedent that was not fulfilled, and that the Agreement was "substantively unconscionable, in that it would require Mrs. Cunningham to spend tens of thousands of dollars to travel across the county to pursue her claims" (Dkt. #8 at p. 1).

On August 22, 2024, Defendant filed its Reply, arguing that it entered into a valid arbitration agreement with Plaintiff, that it was not required to sign the Agreement, that it satisfied all conditions to compel arbitration, and that it resolved Plaintiff's unconscionability concerns by agreeing to arbitrate in Dallas, Texas (Dkt. #11).

Following Defendant's Reply, Plaintiff filed a Motion to Strike Defendant's Reply (Dkt. #12). Plaintiff argues that Defendant's Reply raises new arguments and evidence barred by the parol evidence rule (Dkt. #12). On September 6, 2024, Defendant filed a Response to Plaintiff's Motion to Strike, arguing that it responded only to arguments raised in Plaintiff's Response to Defendant's Motion to Compel Arbitration, and therefore, justifiably relied on new evidence to make its own arguments (Dkt. #14). The Motions are now ripe for decision.

## LEGAL STANDARD

Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator, rather than a court, will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, the policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n. 5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into *any arbitration agreement at all.*" *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). This initial question is for the Court. *Kubala*, 830 F.3d at 201. To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Under Illinois law, a binding contract requires "(1) offer and acceptance; (2) definite and certain terms; (3) consideration; and (4) performance of all required conditions." *Tower Inv'rs, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 937 (Ill. App. Ct. 1st Dist. 2007)

If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question usually is for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy

favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## ANALYSIS

The instant Motions present three issues for the Court to resolve, namely (1) whether the FAA procedurally governs the Agreement; (2) whether the Agreement is valid under substantive Illinois contract law; and (3) whether Plaintiff's claim falls within the scope of the Agreement. As an initial matter, the Court must address Plaintiff's Motion to Strike (Dkt. #12). Plaintiff contends that the Court should strike Defendant's Reply because it improperly includes several new factual allegations and legal documents constituting impermissible parol evidence. (Dkt. #12 at p. 1). Yet, the parol evidence rule is inapplicable here, as it only bars the introduction of prior or contemporaneous agreements that contradict, modify, or supplement the terms of a written contract—it does not limit the scope of argument permitted in a moving party's brief. *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1217 (Ill. 1994). Plaintiff's argument appears to invoke Local Rule CV-7(f), allowing "a party who has filed an opposed motion [to] serve and file a reply brief responding to the issues raised in the response"—not the parol evidence rule.

5

The Court is satisfied, however, that Defendant's briefing properly responds to the arguments Plaintiff presented in its Motion. Therefore, the Court finds that Plaintiff's Motion should be **DENIED**. Having resolved that issue, the Court now turns to the remaining substantive issues.

### I.     Applicability of the FAA

At the outset, the Court must first decide whether the FAA applies. In relevant part, the Agreement states: "The Federal Arbitration Act shall govern this Agreement, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of the arbitrator, or settlements under this Agreement" (Dkt. #7-1 at p. 6). Because the Agreement explicitly states that the FAA governs, the Court will apply the FAA to procedural matters. *See Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355, 361 (5th Cir. 2003) (explaining that the FAA governs the construction of an agreement to arbitrate "unless the choice-of-law provision 'specifically excludes[s] the application of federal law'"). Thus, the Court will apply the two-step framework to determine whether it should compel arbitration. *Kubala*, 830 F.3d at 201.

### II.    Arbitration Agreement Validity

The FAA reflects a liberal federal policy favoring arbitration. *CompuCredit Corp.*, 565 U.S. at 97. However, this policy does not apply when an agreement between parties to arbitrate is invalid. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). To determine whether an agreement to arbitrate is valid, the Court uses ordinary state contract law. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). Before the Court can determine whether the Agreement is valid under ordinary state contract law, however, the Court must first conduct a choice-of-law analysis to determine which state law should apply. *See Volt*, 489 U.S. at 478–79. As discussed below, the Court finds that Illinois state law should apply.

### A. Choice of Law

In *Volt*, the Supreme Court established that the interpreting court must honor an arbitration agreement's choice-of-law provision and apply the law of the jurisdiction selected by the parties. *See Volt*, 489 U.S. at 478–79. Here, the Agreement states: "the law of the State of Illinois, and/or federal law, as applicable, shall [be] the interpretation and enforcement of this Agreement" (Dkt. #7-1 at p. 6). Because the Agreement states that "the law of the State of Illinois" shall interpret the agreement, the Court will interpret the validity of the agreement using Illinois state contract law (Dkt. #7-1 at p. 6). Further, Illinois state law establishes that "in general, the forum court applies the choice of law rules of its own state to determine which state's law will apply" *Landmark Am. Ins. Co. v. NIP Grp., Inc.*, 962 N.E.2d 562, 570 (Ill. App. Ct. 1st Dist. 2011). Because the choice-of-law provision would be valid under both federal and state law—here, Illinois law—the Court will honor the Agreement's choice-of-law provision by applying substantive Illinois state law. *See Volt*, 489 U.S. at 478–79.

### B. Agreement Validity Under Illinois Law

Having established that Illinois state law should apply, the Court now turns to the question of the Agreement's validity. Plaintiff contends that the Agreement is invalid for two reasons. First, Defendant did not sign the Agreement (Dkt. #8 at pp. 9–10). Second, the Agreement substituted common nouns like "Company" for Defendant's name, raising a question as to whether the Agreement specifically identified Defendant (Dkt. #8 at p. 9). As explained below, the Court believes that offer and acceptance occurred even without the Defendant's signature. *See In re Est. of Adames*, 178 N.E.3d 235, 246 (Ill. App. Ct. 1st Dist. 2020). The Court also finds that the Agreement's use of common nouns is sufficiently definite and certain to bind Plaintiff to the contract. *Mullberg v. Johnson*, 91 N.E.2d 63, 64 (Ill. App. Ct. 1st Dist. 1950). Thus, the Court finds

that the Agreement is valid under Illinois contract law. *See Id*; *Volt*, 489 U.S. at 478–79; *In re Est. of Adames*, 178 N.E.3d at 246.

### 1.     Offer and Acceptance

For a contract to exist, there must be an offer and acceptance. *Loeb v. Gray*, 475 N.E.2d 1342, 1347 (Ill. App. Ct. 5th Dist. 1985). Here, Defendant extended Plaintiff a definite offer, which was reduced to writing and delivered to Plaintiff. Neither party disputes this fact (*See generally* Dkt. #7; Dkt. #8; Dkt. #11). The specific dispute, then, centers on the form of acceptance required to create a valid and binding agreement. Plaintiff argues the Agreement is invalid because it did not have a signature block for Defendant, nor did Defendant sign the document (Dkt. #8 at pp. 9–10). Plaintiff also argues that both parties' signatures were needed for the Agreement to take effect (Dkt. #8 at pp. 9–10). Further, Plaintiff argues that Defendant did not satisfy the condition precedent[1] in Instruction 16 of the Agreement, purportedly requiring each party to sign the Agreement to make it valid and enforceable (Dkt. #7-1 at p. 7).

Generally, parties must sign a document to enter into a contract. *In re Est. of Adames*, 178 N.E.3d at 245. When a written contract is not signed, however, the parties' intent determines whether the contract is binding. *Id*. Moreover, a "condition precedent is defined as 'an act that must be performed or an event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform.'" *Id*. (quoting *Cathay Bank v. Accetturo*, 66 N.E.3d 467, 477 (Ill. App. Ct. 1st Dist. 2016)). Therefore, whether signing a contract is a condition precedent is based on the parties' intent. *Id*. (citing *Lynge v. Kunstmann*, 418 N.E.2d 1140, 1144 (Ill.

---

[1] Instruction 16 states that "each of the Parties hereto, either individually or by a duly authorized representative, has signed this Agreement on the date set forth . . . " (Dkt. #7-1 at p. 6).

8

App. Ct. 2d Dist. 1981)). Additionally, *Adames* makes clear that no contract will exist until both parties have signed when parties reduce an agreement to writing that contains a condition precedent requiring signatures. *Id*. at 246 (citing *S.N. Nielsen Co. v. National Heat & Power Co.*, 337 N.E.2d 387, 391 (Ill. App. Ct. 1st Dist. 1975)).

However, the court notes that "'a party named in a contract may, by [their] acts and conduct, indicate [their] assent to its terms and become bound by its provisions even though [they have] not signed it.'" *Id*. (quoting *Landmark Properties, Inc. v. Architects International-Chicago*, 526 N.E.2d 603, 606 (Ill. App. Ct. 1st Dist. 1988)). "Whether an act is necessary to [the] formation of the contract or the performance of an obligation under the contract depends upon the facts of the case." *Id*. (quoting *McAnelly v. Graves*, 467 N.E.2d 377, 379 (Ill. App. Ct. 5th Dist. 1984)).

Here, the Court concludes that the Agreement is valid even assuming that Defendant did not satisfy a condition precedent. The Court acknowledges that the Agreement's language can be interpretated to require both parties to sign the contract (Dkt. #7-1 at p. 7). Yet, only Plaintiff signed the contract (Dkt. #7-1 at p. 7). The question, however, is whether the Agreement required Defendant's signature to be valid and enforceable. In view of *Adames*, describing a condition precedent as an act that must be performed before a contract is valid and enforceable, the Court agrees that the Agreement's provision stating that "each of the Parties hereto, either individually or by a duly authorized representative, has signed this Agreement on the date set forth" constitutes a condition precedent (Dkt. #7-1 at p. 7).

However, *Adames* also notes that when an agreement's condition precedent was not met, a party named in a contract, may by their acts, nonetheless indicate an intent to be bound. *In re Est. of Adames*, 178 N.E.3d at 246. In the Court's view, that reasoning is equally applicable here,

9

particularly because Defendant actually hired Plaintiff as an employee despite an unfulfilled condition precedent. In doing so, Defendant completed tasks typically associated with initiating Plaintiff's employment (e.g., sending an offer letter, delivering onboarding documents, and establishing a start date and compensation plan), all of which indicates an intent by both parties to be bound to an employment agreement (Dkt. #11-1 at pp. 6–16). Because Defendant's intent to enter into a contract with Plaintiff is apparent from Defendant's hiring and continued employment of Plaintiff, the Court finds that the absence of a signature on the Agreement does not stand in the way of validity and enforceability. Both parties' actions demonstrate an intent to be bound by the employee contract. *See Yellow Book Sales & Distribution Co., Inc. v. Feldman*, 982 N.E.2d 162, 171 (Ill. App. Ct. 1st Dist. 2012). Therefore, the Court finds that there was a valid offer and acceptance.

    **2.**  **Definite and Certain Terms**

  Having found a valid offer and acceptance, the next step in the inquiry under Illinois law is to ascertain whether the material terms of the Agreement are definite and certain. *See Morey v. Hoffman*, 145 N.E.2d 644, 647–48 (Ill. 1957) (stating "[a contract] is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof . . . to ascertain what the parties have agreed to do"). Plaintiff argues that the Agreement is invalid because it does not expressly name Defendant or its subsidiaries (Dkt. #8 at p. 9). *Mullberg v. Johnson* is instructive on this point. 91 N.E.2d at 64.

  In *Mullberg*, the court found that a contract is defective if it does not reference a particular party to be bound by the contract. The contract in *Mullberg* did not mention the plaintiff in any way, so the court held that the agreement was invalid. *Id*. *Mullberg* is distinguishable from this case, however, because the Agreement references Defendant as "Company" (Dkt. #7-1 at p. 6). While the Agreement does not explicitly state Defendant's name, the Court believes that Plaintiff had to

have known the party with which she agreed to arbitrate. For example, Plaintiff signed multiple documents to initiate her employment with Defendant, including a W-4, Electronic Signature Consent Form, and Background Check Notice (Dkt. #11-1 at pp. 11–16). Each of these documents was signed within minutes of signing the Agreement (Dkt. #11 at p. 2). These documents referred to Defendant numerous times, and Plaintiff's signature on each document demonstrates her intent to be employed by Defendant. Moreover, Plaintiff knew that signing the Agreement was a prerequisite to employment because Defendant's HR department emailed her stating "[y]our employment is contingent upon our receipt of . . . the signing of the Manager Arbitration Agreement" (Dkt. #11-1 at p. 9). Because Plaintiff knew her employment was contingent upon signing the Agreement at the time she signed them, the Court can reasonably infer that she intended to be bound by the Agreement. *See Yellow Book Sales & Distribution Co., Inc.*, 982 N.E.2d at 171 ("[t]he intent to be personally bound, however, need not be expressed but may also be inferred by implication reasonably drawn from all the facts and circumstances in evidence"). Thus, the Court finds that the Agreement's terms were sufficiently certain and definite. In light of Court's earlier conclusion that the parties' offer and acceptance were valid, the Court therefore holds that the Agreement is also valid and enforceable. *See Morey*, 145 N.E.2d at 647–48; *Loeb*, 475 N.E.2d at 1347.

### III.  Whether the Dispute Falls Within the Scope of the Agreement

Having determined that the agreement is valid, the Court must now assess whether Plaintiff's claim falls within the scope of the Agreement. *Kubala*, 830 F.3d at 202. The Agreement states in Instruction 2(c) that:

> Except as provided herein, this Agreement applies to any legal or equitable claim, demand, or dispute between Employee (including Employee's agents, administrators, or assigns) and the Company (including its parents, affiliates,

11

> successors, assigns, agents, officers, directors, employees, and administrators) which in any way relates to or arises from: … claims brought under any federal, state or local statute, law, ordinance, regulation, or order, or the common law of any state, relating to Employee's employee benefits or working conditions, including without limitation claims related to an paid or unpaid leaves of absence, employee benefit plans, employee health and safety, and activity protected by federal employment and/or labor laws.

(Dkt. #7-1 at p. 6).

The Court finds that Plaintiff's dispute falls within the scope of Instruction 2(c) because it arises from her working condition. Specifically, Plaintiff's dispute arises from a retaliation claim based on her reporting of sexual harassment to her employer. The need to report sexual harassment as a manager is a direct effect of the working conditions set by Defendant. In other words, Plaintiff would have had no sexual harassment to report but for the working conditions created by Defendant through hiring, training, and setting harassment policies for Plaintiff's employment. Thus, in the Court's view, Plaintiff's claim falls within the scope of the Agreement.

In sum, the Agreement is valid and enforceable under Illinois contract law, and Plaintiff's claim is precisely of the nature contemplated by the Agreement. Therefore, the Agreement is enforceable under the FAA. Consistent with the strong federal policy favoring arbitration, then, the Court will enforce the Agreement. *See CompuCredit Corp.*, 565 U.S. at 97 (explaining that the FAA establishes "a liberal federal policy favoring arbitration agreements"). Therefore, the Court finds that Defendant's Motion should be **GRANTED**.

## CONCLUSION

It is therefore **ORDERED** that Motion to Compel Arbitration and Stay the Proceedings (Dkt. #7) is hereby **GRANTED**. It is further **ORDERED** that Plaintiff's Motion to Strike Defendant's Reply Brief and Newly-Submitted Evidence or in the Alternative, to File a Sur Reply

(Dkt. #12) is hereby **DENIED**. It is further **ORDERED** that the arbitration be held in Dallas, TX. It is further **ORDERED** that this case be stayed pending arbitration.

    **IT IS SO ORDERED.**

    **SIGNED this 24th day of June, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE